**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ROBIN SWINT,                                            Case No. 1:13-cv-582

        Plaintiff,                                  Barrett, J.
                                                             Bowman, M.J.

   v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Robin Swint filed this Social Security appeal in order to challenge the Defendant's determination that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED, because it is NOT supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") on July 14, 2009, alleging disability beginning on October 9, 2007, based upon a combination of physical and mental impairments. Plaintiff's application was denied initially and upon reconsideration, and she timely requested an evidentiary hearing. On July 14, 2011, an administrative hearing was held at which Plaintiff appeared in Cincinnati with counsel. (Tr. 26-73). Plaintiff provided testimony, as did a vocational expert. Administrative Law Judge ("ALJ") John S. Pope presided over the hearing from Chicago via video-conference. Following the hearing,

the ALJ sent Plaintiff for two consultative examinations in order to assess her recovery from stroke as well as her mental health. (Tr. 85). On February 14, 2012, he issued a written decision in which he concluded that Plaintiff was not disabled. (Tr. 79-94). The Appeals Council denied review; therefore, the ALJ's decision remains as the final decision of the Commissioner. Plaintiff filed the instant complaint in order to challenge that decision.

Plaintiff was 48 years old at the time of the decision. She has a limited education, having dropped out of high school after the tenth grade without having earned a G.E.D., and has past relevant work as a cashier, housekeeper, janitor, and general laborer. (Tr. 94). The ALJ found that Plaintiff "has the following severe impairments: nonobstructive coronary artery disease, history of cerebrovascular accident in July 2010, asthma, hypertension, degenerative disc disease, obesity, [and] depression." (Tr. 82). However, the ALJ determined that none of those impairments or combination thereof met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (*Id.*). Rather, the ALJ concluded that Plaintiff retained the following residual functional capacity ("RFC") to perform a range of "unskilled, light work…, except she must avoid concentrated exposure to extreme heat, extreme cold, and pulmonary irritants." (Tr. 84). Based upon the testimony of the vocational expert, the ALJ found that Plaintiff could perform her past relevant work as a cashier, and was not under a disability. (Tr. 94).

In contrast to the ALJ's decision, Plaintiff argues that she is disabled due to a combination of severe asthma and frequent hospitalizations. In her Statement of Errors, Plaintiff argues that the ALJ erred when he: (1) failed to adequately explain his basis for

finding Plaintiff did not equal Listing 3.03; (2) failed to include psychological limitations and/or physical limitations from the two examining consultants in Plaintiff's RFC assessment; and (3) improperly assessed Plaintiff's credibility.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone

>of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

**1. Failure To Adequately Explain Rejection of Listing 3.03**

Plaintiff argues that the ALJ failed to sufficiently articulate the basis for his conclusion at Step 3 of the sequential analysis that Plaintiff's asthma did not meet or equal a Listing, especially after she suffered a stroke in July 2010. At the evidentiary hearing, Plaintiff's attorney provided an opening statement in which she argued that Plaintiff's asthma and high blood pressure in particular "have been difficult to control because the claimant has been unable to afford medications," and that Plaintiff was precluded from full-time work "due to the combination of her impairments, and the frequency of her visits to the emergency rooms and hospitals." (Tr. 31).

Before this Court, Plaintiff argues specifically that she either met or equaled Listing 3.03B because records demonstrate exacerbations of asthma that required physician intervention six times in 2009, and at least once in 2010. Defendant does not dispute that Plaintiff experienced such exacerbations at a rate that technically met or exceeded the frequency required by Listing 3.03B. On the other hand, Listing 3.03B requires physician intervention at the required frequency "in spite of" prescribed treatment, and a portion of the ALJ's analysis and Plaintiff's records reflect that she frequently presented to the ER on occasions during which she either did not have sufficient medication on hand due to financial limitations, or because she had used up her prescribed medications at a more frequent rate than anticipated. Plaintiff argues that both of those reasons were excusable and therefore should not be considered as non-compliance for purposes of evaluating the Listing Level severity of her condition. In addition, Plaintiff now argues that her combination of impairments – particularly her frequent hospitalizations following her July 2010 stroke – constituted medical

5

equivalence for purposes of proving the severity of absenteeism required by the Listing.[1]  Notably, Plaintiff's counsel did not specifically argue before the ALJ that Plaintiff met or "equaled" Listing 3.03B or any other identified Listing.

In his written opinion, the ALJ stated that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment."  (Tr. 82). The only discussion of any particular listing, however, was the ALJ's determination that Plaintiff's claimed mental limitations did not meet or equal Listing 12.04.  By contrast, the ALJ did not refer to Listing 3.03B for asthma or to any other potential listing relevant to Plaintiff's physical ailments, notwithstanding counsel's opening remarks.  In support of her argument that the ALJ's failure to include more reasoned analysis under Step 3 for her physical ailments requires remand, Plaintiff relies heavily upon a prior unpublished decision by this Court, *Risner v. Com'r of Soc. Sec.*, Case No. 1:11-cv-36, 2012 WL 893882 (S.D. Ohio, March 15, 2012)(Spiegel, J.).

In *Risner*, the ALJ failed to reference <u>any</u> specific listing prior to concluding that the plaintiff did not meet or equal any Listing at Step 3.  The undersigned magistrate judge acknowledged case law from other jurisdictions holding that a blanket statement that a claimant does not meet or medically equal any Listing is legally insufficient to comply with Step 3 of the sequential analysis, *see, e.g., Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *Burnett v. Com'r of Soc. Sec.*, 220 F.3d 112, 119-120 (3rd Cir. 2000), but ultimately recommended affirming the ALJ's decision based upon other authority, waiver, and alternatively, the perceived harmlessness of the error on the facts

---

[1] The Defendant does not specifically address the "absenteeism" equivalency argument.

presented. *Risner*, 2012 WL 219539 at *3. However, United States District Judge S. Arthur Spiegel rejected that R&R based on published case law from other circuits, and the unpublished decision of the Sixth Circuit Court of Appeals in *Reynolds v. Com'r of Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. 2011).

In remanding to the Commissioner in *Risner*, Judge Spiegel wrote:

Requiring a reasoned and explained conclusion is not merely a formalistic requirement. On the contrary, as noted by the Sixth Circuit, it is a necessary component for this Court to ascertain whether the ALJ's decision was supported by substantial evidence. It is not for the Magistrate Judge to step into the shoes of the ALJ and complete his job for him. The ALJ should, in the first analysis, assess whether the evidence put forth shows that Plaintiff meets or equals a Listing. Should he determine she does not, the ALJ must explain his decision with a discussion and analysis of the evidence.

*Risner*, 2012 WL 893882 at *5.

Undoubtedly, Plaintiff retains the burden at the third step of the sequential evaluation to establish that she meets or equals a listed impairment. *See Evans v. Sec'y of Health & Human Servs.,* 820 F.2d 161, 164 (6th Cir.1987). Not infrequently, the undersigned has recommended affirming decisions in which little detail is included in an ALJ's Step 3 finding. In general, however, those cases present circumstances in which either the Step 3 finding is not challenged at all, or the plaintiff fails to show that the ALJ committed anything more than harmless error because he or she does not put forth evidence that could possibly satisfy the Listing. *See M.G. v. Com'r of Soc. Sec.*, 861 F. Supp.2d 846, 860-861 (E.D. Mich. 2012)(holding that an ALJ's failure to analyze the elements of a Listing under Step 3 may be considered harmless in some cases, without the Court overstepping its primary role as a reviewer of fact).

Defendant acknowledges that in this case, the ALJ did not "specifically" address whether Plaintiff's asthma met or equaled Listing 3.03, but argues that there is no

7

"heightened articulation standard" for Step 3 analysis in the Sixth Circuit. (Doc. 14 at 3). The Commissioner maintains that while the ALJ did not specifically address Plaintiff's asthma in his Step 3 analysis, his subsequent review of her asthma records made "implicitly" clear that she did not meet or equal the relevant listing. (*Id.* at 4).

The undersigned disagrees, to the extent that close review confirms that this case is close to *Reynolds* and *Risner,* in which remand was required.  As in those cases, the ALJ explained his reasons for concluding that Plaintiff did not meet or equal a listing based upon her mental impairment under Listing 12.04, but failed to include any parallel discussion of the degree to which her physical impairments, such as her asthma, might have "equaled" a listing.  While it is true that counsel did not specifically direct the ALJ's attention to Listing 3.03, that fact does not necessarily indicate waiver, where counsel arguably raised the issue in her opening statement.  In *Reynolds,* for example, the Sixth Circuit wrote:

> Ultimately, the ALJ erred by failing to analyze Reynolds' physical condition in relation to the Listed Impairments. Put simply, he skipped an entire step of the necessary analysis. He was required to assess whether Reynolds met or equaled a Listed Impairment (such as the one above), but did not do so. Admittedly, Reynolds did not raise this specific objection to the decision below, and generally arguments not raised are abandoned. However, this rule is prudential and not jurisdictional, *Dorris v. Absher,* 179 F.3d 420, 425 (6th Cir.1999), and the requirement for specific objections may be excused "in the interest of justice." *Kelly v. Withrow,* 25 F.3d 363, 366 (6th Cir.1994). This court has previously considered the issue of whether certain impairments meet or equal a listing, even though that issue had not been raised. *See Gwin v. Comm'r of Soc. Sec.,* 109 Fed.Appx. 102 (6th Cir.2004).

*Reynolds v. Com'r of Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. 2011)

Based upon the record presented in this case, the undersigned recommends remand for further review.  In so doing, the undersigned emphasizes that the recommended remand does not mean that a "guess the relevant Listing" approach at

the hearing level, in the absence of any notice to the ALJ that a plaintiff seeks a determination on any particular listing, ordinarily will suffice to preserve a Step 3 issue for purposes of a judicial appeal. Here, however, counsel brought the issue of Plaintiff's asthma in combination with her frequent hospitalizations to the ALJ's attention. Notwithstanding the failure to refer to Listing 3.03, Plaintiff's presentation was sufficiently specific to require the ALJ to better articulate why he did not believe her physical limitations met or equaled any listing. *Accord Miller v. Com'r of Soc. Sec.*, 181 F. Supp.2d 816, 820 (S.D. Ohio 2001)(directing remand where ALJ's decision contained no discussion of seizure listing, and plaintiff presented "evidence suggesting that he was disabled under Listing §11.03" based upon objective EEG findings, and testimony concerning the frequency and severity of his epileptic seizures); *but contrast, e.g., Bowden v. Com'r of Soc. Sec.*, 173 F.3d 854 at *8 (6th Cir. 1999)(Table, holding that medical evidence did not satisfy Plaintiff's burden to show that pseudoseizures met Listings 11.02, 11.03, or 12.07).

On remand, the ALJ also should consider Plaintiff's obesity, which corresponds to a BMI of 44.9. The ALJ found that her obesity "significantly limits her ability to engage in work activity" and referenced SSR 02-1p, but then failed to discuss whether that severe impairment contributes to her meeting or equaling any listed impairment. See *Diaz v. Com'r*, 577 F.3d 500 (3rd Cir. 2009)(remanding where, despite finding that the plaintiff's morbid obesity was a "severe" impairment, the ALJ failed to comply with SSR 02-1p by explaining the effects of her obesity at Step 3 and beyond); s*ee also Norman v. Astrue,* 694 F. Supp.2d 738, 741 (N.D. Ohio 2010)(where obesity is severe impairment, ALJ must do more than "mention the fact in passing."); *Motley v. Com'r of Soc. Sec.*, Case No. 1:08-cv-418-SAS, 2009 WL 959876 (S.D. Ohio April 8,

2009)(remanding based upon failure to discuss evidence in light of analytical framework of Listing, including effect of obesity).

### 2. Substantial Evidence Analysis (Consulting Reports)

Plaintiff's second assertion of error confirms the necessity of remand. The ALJ referred Plaintiff for a consultative psychological examination, performed by Dr. Berg, and agreed that Plaintiff should be limited to unskilled repetitive tasks based upon her "moderate" limitations in concentration, persistence, or pace. The ALJ cited and appeared to agree with Dr. Berg's findings that Plaintiff has impairment "with respect to understanding, remembering, and carrying out complex instructions and responding appropriately to usual work situations and to changes in the routine work setting." (Tr. 83). However, the ALJ ultimately failed to include any mental restrictions in Plaintiff's RFC finding, except for limiting her to "unskilled" work.

Unfortunately for Defendant, the limitation to unskilled work does not adequately factor in "moderate" limitations in concentration, persistence or pace. The failure to include any mental limitations is not supported by substantial evidence, thereby rendering the VE's testimony insufficient to uphold the decision. *See generally Ealy v. Com'r*, 584 F.3d 504, 516 (6th Cir. 2010)(where medical source opinions specifically limited Plaintiff's ability to sustain attention and imposed restrictions in pace, speed and concentration, ALJ's "streamlined" hypothetical omitting those restrictions was insufficient); *Edwards v. Barnhart*, 383 F. Supp.2d 920, 930-931 (E.D. Mich. 2005)(hypothetical limiting claimant to "jobs entailing no more than simple, routine, unskilled work" not adequate to convey moderate limitation in ability to concentrate, persist, and keep pace). It is not at all clear from the present record that Plaintiff could continue to perform her prior work as a cashier with her current mental limitations.

The ALJ also referred Plaintiff for a second consulting examination in order to assess her physical limitations following her July 2010 stroke, but then failed to adopt the examiner's opinions concerning those limitations. Dr. Bailey found on clinical examination that Plaintiff continued to have some left-sided weakness as a result of her stroke, and therefore was limited to no more than "frequent" use of either upper extremity for reaching, handling, fingering, feeling and pushing or pulling. (Tr. 996). Dr. Bailey further opined that Plaintiff was limited to no more than "frequent" use of ramps or stairs, no more than "occasional" use of ladders or scaffolds, and that she should "never" bend, stoop, kneel, crouch or crawl. (Tr. 997). She opined that Plaintiff was limited to "frequent" use of a motor vehicle, only occasional exposure to moving machinery, that she should never be exposed to extreme temperatures or to vibration, humidity/wetness, or dust/fumes/pulmonary irritants. (Tr. 998). Last, Dr. Bailey limited Plaintiff to walking no more than two hours at a time and no more than three hours per day, with standing limited to three hours at a time and not more than six hours per day. (Tr. 995). The ALJ failed to include any of the postural limitations found by Dr. Bailey, and did not include any of the other referenced limitations except for a streamlined restriction to "concentrated exposure to extremes of heat, cold, or pulmonary irritants." (Tr. 84).

The Defendant argues in response that despite the apparent error in the ALJ's failure to include additional limitations or to discuss why he was rejecting them, Plaintiff has failed to show that additional limitations would have precluded her from performing her past relevant work. Citing the DOT description of the job of "Cashier II," Defendant argues that because no more than "frequent" fingering, handling, and reaching, and no balancing, stooping, kneeling, crouching or crawling are required, the ALJ's analysis

11

reflects no more than harmless error. However, in view of the other errors noted, including but not limited to the ALJ's failure to address Plaintiff's obesity, mental limitations, and significant postural limitations,[2] the undersigned does not agree that remand for further consideration would be "an idle and useless formality." (Doc. 14 at 5, citing *Wilson v. Com'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir, 2004)(additional citation omitted).

Last, on remand the ALJ should offer some analysis of the frequency of Plaintiff's doctor's appointments, emergency room visits, and prior hospitalizations, to the extent that Plaintiff maintains that she would be unable to sustain competitive full-time employment due to excessive absenteeism.

### 3. Credibility

In her third assignment of error, Plaintiff challenges the ALJ's adverse credibility determination. An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387, 392 (6th Cir. 2004).

---

[2]Plaintiff also argues that her postural limitations restrict her to sedentary work rather than light work, which requires standing and/or walking for at least six hours in an eight-hour day. This issue also should be addressed on remand.

12

The ALJ found "the claimant's statements concerning the intensity, persistence, and limiting effects of [her] symptoms…not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 85). The ALJ noted records that demonstrated that Plaintiff had sought emergency room treatment and had been hospitalized on most occasions only after running out of her asthma medications, and that on only two occasions in 2007 and 2008 did she show "no indication that she had run out of medication." (Tr. 85). He pointed to a few reports listing Plaintiff's asthma as "stable" despite frequent ER treatment. (Tr. 86). He reiterated that, despite a strong history of asthmatic exacerbation, "almost all of these instances were precipitated by noncompliance, as the claimant had run out of medication or not appropriately taken those medications prescribed." (Tr. 92). The ALJ acknowledged that he was "mindful of the [financial] difficulty with access to care and treatment," but discounted Plaintiff's hardships based upon "the fact that she remained asymptomatic for so long does not suggest more severely limiting asthma" during the referenced time period. (Tr. 92). Last, he noted that since Plaintiff had more recently been able to obtain free care, her asthma appeared to be well-controlled. (*Id.*).

The ALJ's analysis of Plaintiff's financial inability to afford the prescribed treatment arguably reflects reversible error. A failure to seek or obtain treatment due to indigence, as opposed to deliberate non-compliance, should not be viewed as an adverse indication of credibility. See *McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990)(*per curiam*); see also SSR 96-7p, 1996 WL 374186 at *7 ("the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record,

13

that may explain infrequent or irregular medical visits or failure to seek medical treatment.").

On the other hand, not all of the ALJ's analysis reflects error outside the boundaries of a reasonable "zone of choice," given this Court's special deference to credibility findings. As additional reasons for discounting Plaintiff's credibility, the ALJ pointed out that she reported taking "no medication for pain." (Tr. 92). That finding is in stark contrast to Plaintiff's hearing testimony, as she repeatedly testified that she suffers daily from near "constant" pain in her neck, head, right leg, left arm, and chest at the highest possible pain levels, often a "10." (Tr. 63-64, 67-68). The ALJ pointed out that Plaintiff ambulates normally, and shows well-reserved muscle strength and normal range of motion. (Tr. 92). He found Plaintiff's reported daily activities to be consistent with an ability to maintain full-time employment. (Tr. 92-93). Additionally, Plaintiff testified that she was able to maintain part-time work as a cashier for 20 hours per week from March 2007 through August 2008, and that from August 2008 through June 29, 2009 she worked as a janitor, which ordinarily is performed at a the "medium" level of exertion, without any special conditions or accommodations. (Tr. 81, 93).

Despite the existence of some support for an adverse credibility finding, I recommend that the ALJ reassess Plaintiff's credibility on remand. Both the apparent error concerning Plaintiff's financially driven "non-compliance," as well as the existence of other errors that may have impacted the overall credibility evaluation, prevent the undersigned from finding substantial evidence to support the current credibility finding.

### III. Conclusion and Recommendation

In *Faucher v. Sec'y of Health and Human Servs.,* 17 F.3d 171, 173 (6th Cir. 1994), the Sixth Circuit set forth "what a district court should do once a determination is

14

made that an ALJ erroneously applied the regulation and the Secretary's denial of benefits therefore must be reversed." *Faucher* explained that a trial court "can reverse the decision and immediately award benefits *only* if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id.* at 176 (emphasis added). This is not a case in which all factual issues have been resolved.

Therefore, **IT IS RECOMMENDED THAT** the decision of the Commissioner to deny Plaintiff DIB and SSI be **REVERSED** because it is NOT supported by substantial evidence in the record as a whole. This case should be remanded for further review and evaluation at the administrative level, consistent with this Report and Recommendation.

 /s Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ROBIN SWINT,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:13-cv-582

Barrett, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).